## H. M. PHARR *v.* THE STATE.

1. MURDER — EVIDENCE. — In a trial for murder, the prosecution imputed rob-
bery as the motive, and was permitted, over objection by the defence, to
prove that the accused, when pursued and arrested, had in his possession
certain personal property seen in possession of the deceased just before
the homicide. *Held*, that the fact was competent as a circumstance tend-
ing to inculpate the accused, but subject to explanation by him.

2. SAME. — A State's witness having testified that he pursued and arrested
the accused more than thirty miles from the scene of the homicide, the
defence asked the witness whether the accused, when informed that he
was charged with the murder, said anything about his having started
anywhere after the killing, and about his purpose in doing so. On ob-
jection by the State, the question was suppressed by the court. *Held*,
that the ruling was correct; because the defendant's statement, if any was
made, could not have been *res gestæ*, nor otherwise admissible as evidence
in his own behalf.

3. SAME. — The State having elicited testimony that the accused, after his
arrest, claimed certain property found in possession and supposed to be-
long to the deceased, the defence called for the whole of the conversa-
tion in which the claim was asserted by the accused. The trial court
ruled that the witness might state everything said by the accused about
the property, but nothing he said about the killing. The witness, how-
ever, stated that he could not tell what the accused said about the prop-
erty without also telling what he said about the killing, and thereupon
the court suppressed the inquiry and answer. *Held*, error, in view of
art. 751 of the Code of Procedure, which enacts that "when part of an
act, declaration, or conversation, or writing, is given in evidence by one
party, the whole on the same subject may be inquired into by the other."

4. SAME — PRACTICE. — When the case involves life or liberty, and its merits

are obscure and dependent on circumstantial evidence, a liberal application, *in favorem vitœ et libertate*, should be given to the rules of evidence in determining doubtful questions of admissibility.

5. CHARGE OF THE COURT. — Though the law authorizes the accused to prove his previous good character, such evidence necessitates no instructions thereupon to the jury.

APPEAL from the District Court of Johnson.     Tried below before the Hon. J. ABBOTT.

This is a second appeal from convictions of the appellant for murder.   In 7 Texas Court of Appeals Reports, at p. 472, will be found a report of the appeal resulting from the first trial in the court below, when the conviction was for murder in the first degree.   On the appeal, that conviction was set aside because of error in the charge of the court, and the cause was remanded for a new trial.

The second trial in the court below was had in March, 1880, and resulted in the conviction of the appellant for murder in the second degree, and the assessment of twenty years in the penitentiary as his punishment.   The evidence brought up in the present record is in the main the same as that reported upon the former appeal, but with one material difference.   On the second trial, the prosecution did not draw out from the witness Coulter the statements made to him by the defendant after his arrest, further than the fact that the defendant claimed the pony which other witnesses had seen in possession of the deceased.   It was the effort of the defence to get those statements before the jury which invoked the ruling upon which the case is again remanded. The opinion of the court, in connection with the former report, fully discloses all material facts.

*Brown, Hall & Ramsey,* and *Jack Davis,* for the appellant.

*George McCormick,* Attorney-General, for the State.

WINKLER, J. The case of this appellant is before us for the second time on appeal. On a former appeal, the judgment of the District Court was reversed and the case remanded on account of errors committed on the trial below. 7 Texas Ct. App. 472. The present appeal is from a judgment rendered on a second trial in the court below, by which the appellant was convicted of murder in the second degree, his punishment being assessed at confinement in the penitentiary for a period of twenty years. The questions presented for revision in the present case are in the main so unlike those considered on the former appeal that the discussion and rulings in that case afford but little aid in determining this. Only one question raised on the present appeal was discussed and decided when the case was first before us, to wit: the sufficiency of the indictment. In the former case the court held that the indictment was sufficient as one in the ordinary form for murder. No sufficient reason or authority has been produced to cause us to change or modify our opinion as to the sufficiency of the indictment. The subjects calling for special attention and consideration at our hands are presented by proper bills of exception, set out in the record, and of which there are three in number.

In the first bill of exceptions it is recited that the court, over objection by the defendant, permitted the State to prove that on the day after the homicide the defendant was found in possession of certain personal property which had on the day previous been seen in the possession of the deceased. The objection taken by the defendant to the admissibility of this testimony seems to be that it did not tend to establish any issue in the case, and was calculated to mislead the jury. The testimony was both competent and admissible, under the circumstances, as tending to establish the fact that the defendant was concerned in the perpetration of the homicide of the man shown to have had certain property in his posses-

sion just before his death, and which was found in the defendant's possession soon after; not strictly as evidence of the fact that the defendant was the perpetrator of the homicide, but being a circumstance to go to the jury with the other evidence, to be by the jury considered for whatever value they might put upon it, and the presumption it afforded as tending to connect the defendant with the homicide.

Mr. Wharton, in treating of this subject, does so under the head of "Presumption Arising from Possession of Fruits of Offence." He says that, as a general rule, possession by the defendant of stolen goods raises a reasonable presumption of his having been guilty of stealing them. The possession, however, to have this effect, must be recent, must be unexplained, and must involve the defendant's exclusive control. If the explanation be such as to falsely dispute identity, or to involve any other suspicious points, it increases the presumption of guilt. * * * In homicide it is in like manner admissible to trace to the defendant such articles of personal property as are identified. Am. Cr. Law, sect. 728; *Rex* v. *Burdett*, 4 Barn. & Adol. 122; Wills on Cir. Ev. 241. A like presumption arises, says Mr. Greenleaf (1 Greenl. on Ev., sect. 34), upon an indictment for arson. Proof that property which was in the house at the time it was burnt was soon afterwards found in the possession of the prisoner, was held to raise a probable presumption that he was present and concerned in the affair; and the like presumption is raised in case of murder, accompanied by robbery. Wills on Cir. Ev. 72. In the present case it was competent for the State to prove, as a criminating circumstance against the defendant, the fact that, on the day following the homicide, he was found in possession of personal property held by the deceased recently before his death, subject to be influenced by evidence tending to rebut the presumption of guilt arising from his possession. In other words, it was admissible evidence in the case.

In the defendant's second bill of exceptions it is set out

that, when one of the State's witnesses was on the stand, counsel for the defendant proposed to ask the witness this question : " Please state if, at the time you told the defendant what he was arrested for, after he was arrested, he said anything to you about his having started anywhere after the alleged killing ; if so, please state *where* he said he was going, and for what purpose ?" The question was objected to by counsel for the State, and the court sustained the objection. The court, in giving a bill of exceptions, gives the following explanation for the ruling : " The evidence showed that the defendant was arrested thirty or thirty-five miles from the place of the alleged murder, about seven o'clock at night of the same day of the killing. As to where he may have started to go, or as to what he may have intended to do, was certainly wholly immaterial." In this particular the action and ruling of the court was unquestionably correct. The question asked does not appear to have called in response for anything connected with the act or fact of killing, but rather the acts and declarations of the defendant ; not as to what his intentions were at the time of the homicide, but what were his after-intentions. *Boothe* v. *The State*, 4 Texas Ct. App. 208.

The defendant's third bill of exceptions shows the following : A State's witness testified, in answer to a question propounded by counsel for the prosecution, that the defendant had in his possession at the time of his arrest the property supposed to belong to the deceased, and that, in answer to a question relative to said property asked by the witness, the defendant told the witness that he claimed the property. The witness further stated that this conversation occurred on the day after the arrest of the defendant, but that it occurred at the time that the witness told the defendant on what charge and for what offence he had been arrested. Whereupon (the bill recites) the attorneys for the defendant asked the witness to state all that passed between the witness and the defendant, and particularly to state how the

defendant told him he came into the possession of said property; which questions were objected to by counsel for the State.    The court here, it seems, offered to the defendant, and stated that the witness might state all that was said about the property accounting for the defendant's possession of it, but that the witness must not state anything the defendant said (if anything) about the killing; whereupon the witness said he could not tell what the defendant said about how he obtained the possession of the property, without telling also what he said about the killing.    This the court refused to permit the witness to do, and to the ruling the defendant excepted.

We can well imagine the embarrassing situation in which the court was placed, when, it seems, it had offered to permit counsel for the defendant to examine the witness as to the conversation between the defendant and the witness, to the extent of drawing out what the defendant stated about the property in accounting for the defendant's having it in his possession, which really appears to be the extent to which the way had been opened by the testimony elicited by the direct examination of the witness; and when the witness stated, in effect, that he was unable to separate what the defendant had said about the possession of the property from what he said about the homicide, in this emergency the court decided in favor of the State; and it seems the witness was not allowed to detail one part of the conversation because he could not separate it from the other.    We are not aware of any case where the precise question here presented has been adjudicated.    Hence we are driven to the necessity — as was, doubtless, the court below — of deciding it upon general principles of law, which in our opinion furnish a safe rule for our guidance.

It must be borne in mind that the State, by an examination of her own witness, had drawn out what was evidence of some portion of a conversation between the witness and the defendant.    This being the case, we are of opinion the

defendant was entitled to have the whole conversation placed
before the jury for their consideration, for what they might
deem it worth, be that much or little, when considered as
part of the whole evidence in the case; and particularly is
this so when we consider some of the strange peculiarities
of this case as shown by the evidence. . The evidence tends
strongly to show that the defendant and the deceased were
travelling companions, and strangers in the community in
which they were at the time of the perpetration of the homi-
cide. The guilt of the defendant depended entirely on cir-
cumstantial testimony. One of the inculpating facts in the
chain of circumstances against him, and which, it seems, the
prosecution deemed it expedient to establish, was that the
defendant, when pursued and arrested, was found in pos-
session of property shown to have been in the posses-
sion of the deceased immediately preceding the killing.
That the defendant had possession of this property was,
as we have seen, competent testimony against the de-
fendant. Still, we are unable to see that there was any
necessity for the prosecution to resort to any conversation
of the defendant with the witness to prove this fact. It is
shown by the statement of facts by the witness Coulter,
a State's witness who testified at length in the case. After
testifying as to the arrest of the defendant and his confine-
ment in jail in Hill County, and of the witness having on the
next morning started with him to Alvarado, he says: " The
defendant had the pony the deceased was riding when I saw
him on the 13th, and also the saddle-bags. There was some
clothing in the saddle-bags of deceased. Defendant claimed
the property." On cross-examination, the witness said the
defendant only claimed the horse; and it is with reference to
the testimony of this witness, and apparently in connection
with what he had testified to, as taken from the statement
of facts, that the controversy set out in the bill of excep-
tions arose.

Respecting the rules of law which exclude evidence, whilst

they are to be observed and enforced, yet it is believed that the effect of their enforcement is often to exclude light; and when the case is obscure they should not be too rigidly enforced, but, on the contrary, in a case like the present, where life or liberty is involved in the inquiry, and where guilt is to be established by conclusions or presumptions arising from circumstances, and there is a doubt as to how the rule should be applied, the doubt should be resolved *in favorem vitæ et libertate.* It has been said that a witness, in giving a conversation with a prisoner, though others are named and implicated in the same conversation, must give the whole, including the names, exactly as it occurred, and if other persons are on trial and cannot be affected by it, it is for the judge to tell the jury so. *Rex* v. *Hearne,* 4 Car. & P. 215. And so too of a prisoner's confession in an examination before a magistrate : it must be read with the other names in it, just as it is. *Rex* v. *Clewes,* 4 Car. & P. 221. And so of a letter from one of the prisoners. *Rex* v. *Clewes,* 4 Car. & P. 250. See Cowen & Hill's notes to Ph. on Ev. 399, note 252, pt. 1.

However this may be elsewhere, we are of opinion that the provisions of our own Code of Procedure embrace and are decisive of the question under consideration. Art. 751, Code of Criminal Procedure, is to this effect : "When part of an act, declaration, or conversation, or writing, is given in evidence by one party, the whole on the same subject may be inquired into by the other." See examples given in the article.

We are of opinion, with reference to the question under consideration, that when the witness stated that he could not state what the defendant said as to the possession of the property without making the other statements as to the killing, in justice to the rights of the defendant and agreeably to a proper application of the law, the witness should have been permitted to state the whole of the conversation, a part of which had been put in evidence by the State.

It may be that it amounted to but little or nothing, or it may be that it would have tended to exculpate the defendant, or to mitigate the heinousness of his offence in the estimation of the jury.

Without noticing the various errors assigned, we are of opinion that there was no other error committed on the trial of which the appellant can complain. The charge of the court sufficiently informed the jury as to the issues arising upon the evidence adduced. The charge on circumstantial evidence was full and complete. It was not incumbent on the judge to give a special instruction on good character. The law permits one accused of crime to put his previous good character before the jury for their consideration. All the court is required to do is to permit the evidence to go to the jury, to be by them considered in connection with the other testimony in the case, in order to determine from the whole evidence the guilt or innocence of the accused. *Heard* v. *The State, ante,* p. 1.

For the single error pointed out above, the judgment must be reversed and the cause again remanded.

*Reversed and remanded.*